IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BEEF SOURCE INTERNATIONAL, LLC, | § § | |
| Plaintiffs | § § | C.A. NO. 2:14-cv-104 |
| V. | § § | ADMIRALTY |
| UNDERWRITERS AT LLOYD'S a/k/a LLOYD'S OF LONDON, ELITE UNDERWRITERS INC., and COMPANIA SUD AMERICANA DE VAPORES S.A., | § § § § § § | |
| Defendants | § § | |

**AFFIDAVIT OF ALASTAIR COLES IN SUPPORT OF MOTION TO ALLOW ALASTAIR COLES TO APPEAR VIA TELEPHONE AT THE MEDIATION SCHEDULED FOR MARCH 6, 2015.**

I, Alastair Coles, being of full age duly sworn according to law upon my oath state;

1. I am employed by the defendant, Brit Lloyd's Syndicate 2987 a/k/a/ Brit Insurance, in the capacity as a Marine Claims Adjuster.

2. I am a Fellow of the Chartered Insurance Institute (FCII), a Fellow of the Chartered Institute of Loss Adjusters (FCILA), a member of the European Federation of Loss Adjusting Experts (FUEDI) and a Fellow of the International Federation of Adjusting Associations (FIFAA). I am both an examiner and a tutor for the Marine and Transit qualifying examination of the Chartered Insurance Institute.

3. I have served the Lloyd's market for over 30 years, originally as a Lloyd's broker, then as an independent loss adjuster before taking up the position of a marine claims adjuster, firstly with the Amlin Syndicate of London but then with the Brit Syndicate at Lloyd's by whom I have been continuously employed since October 2009.

4. Brit Syndicates Ltd is an insurance syndicate operating solely within the Lloyd's market. In my capacity as a marine claims adjuster I am required to review claims presented to the market where my employers, Brit, are the underwriters on the policy 'slip'. In US parlance I am a

claims adjuster with authority to agree, settle and, depending on their merits, decline marine cargo, liability, energy, hull, specie and war claims made under policies underwritten by my employer.

5. I am the adjuster currently handling two claims made by Magni Enterprises Corp following damage to a consignment of beef shipped from USA to Chile in 2012.

6. Previously, the case was being handled by my younger colleague who referred it to me after she became concerned about coverage.

7. When the claim was initially notified we were given to understand Magni Enterprises Corp had a direct interest in the affected cargo.

8. After some of the shipping documents were received, not only did it become clear to me that Magni had no interest in the cargo at all but that the insurance policy did not cover the type of cargo involved.

9. Later, after making several unsuccessful efforts to obtain the original Marine Insurance Certificates for the shipments involved, I learned that no Marine Insurance Certificate had been issued and that no shipment declarations or premium had been received and that the Magni policy had been cancelled *ab initio* for this reason. As a direct consequence both Magni claims were duly declined.

10. I am aware that the owner of the damaged cargo, Beef Source International, LLC have subsequently taken legal action against Lloyd's to recover their losses claiming that the benefit of the Brit insurance policy had been assigned to them by Magni.

11. While I am not a US citizen I have the greatest respect for the wisdom and fairness of the US judicial system. I am also aware that in insurance cases such as this it is necessary for the courts to be seen to provide the party making the claim with every possible advantage.

12. Given that there is no insurance contract in place for either of the losses sustained by Beef Source International, LLC, however, I must question the requirement to travel over 5,000 miles and incur substantial travel and accommodation costs in order to attend a mediation in person.

13. I am not a lawyer and while all my professional training has always been based on English law I do not believe the law of contract in UK and USA is very different.

14. In this case there has been no *consensus ad idem* (meeting of minds) as the insurance underwritten by Brit was a policy covering marine cargo belonging to Magni Enterprises Corp. From the Bills of Lading that have been provided, however, it is clear that Magni did not at any stage have an interest in the damaged cargo and, even if they had, it is clear the cover they or their agents asked for was inappropriate. In this connection it should be noted that cargos of chilled meat are specifically excluded under Institute Frozen Food Clauses (A).

15. Dealing next with the assignment, it is my understanding that in order for such an assignment to be effective not only must there be a valid contract to assign in the first place it is also necessary for the assignment to be agreed by both parties to that contract. Neither of these requirements were fulfilled in this case.

16. Finally, while two of the constituents of a valid contract may have been fulfilled in this case – offer and acceptance – it is evident that the third essential constituent – consideration (payment of the premium) – has not.

17. I am also aware that the presiding Judge has requested that the dispute be referred to Mediation and that I am to attend the mediation in person.

18. I understand that mediation can be worthwhile in insurance cases where the cost of attendance can outweigh the value of the dispute, thereby forcing the insurer to agree a commercially viable settlement.

19. However, what I do not understand is how any economic pressure can be exerted and/or be effective in this case whether through mediation or not when there is, and never was, any contractual relationship between the contesting parties.

20. I should mention that I have been involved in a previous mediation in a case involving a cargo dispute in U.S. Federal Court, Pittsburgh, with our appointed advocate, Mr Eugene MacDonald, where all the interested parties including the mediator communicated over the telephone.

21. I would add that in that mediation not only was it possible to bring the case to an amicable and reasonable conclusion with a settlement agreeable to all parties, the amount of the settlement was directly linked to the savings made through not having to incur significant travel and accommodation costs.

22. I am in no doubt that in today's modern technological age a mediation by telephone is speedier, cheaper and just as effective as a mediation where everyone has to attend in person.

23. I make this affidavit in support of the Motion to allow me to appear via telephone at the mediation scheduled for March 6, 2015.

I hereby affirm that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

February 20, 2015

_____
Alastair Coles

Sworn and subscribed before me
This 20th Day of February, 2015

_____
Davinder S. Chhatwal
UK Qualified Solicitor
SRA No. 38002

**Davinder Chhatwal**
Senior Associate
E: davinder.chhatwal@clydeco.com
D: +44 20 7876 4418
M: +44 7956 325 939

Clyde & Co LLP
The St Botolph Building
138 Houndsditch
London, EC3A 7AR

T: +44 20 7876 5000
F: +44 20 7876 5111
www.clydeco.com



CLYDE&CO